# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BANUELOS, | Case No. 1:14-cv-01923---SAB |
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | |
| GLADYS SANDOVAL, et al., | (ECF No. 1) |
| Defendants. | THIRTY-DAY DEADLINE |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed a complaint in this action on December 4, 2014.

## I.

## SCREENING REQUIREMENT

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted.  In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

1

1  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS[1]

Plaintiff's son, Stefan Banuelos, has ADHD and speech difficulties and is developmentally and cognitively delayed. (Compl. 28,[2] ECF No. 1.) Stefan was removed from his parents' custody and a reunification plan was developed. (Id. at 34.) Stefan's grandmother, Gloria Rodriguez, visited Stefan while he was in placement, and eventually he was placed in her home as part of the placement plan. (Id. at 2, 31-32, 40.) On December 19, 2012, a restraining order was revised to allow Plaintiff to make contact with his son only while participating in supervised visits organized through Child Protective Services, and he was allowed contact Ms. Rodriguez by telephone. (Id. at 40.)

Stefan had an Individualized Education Plan (IEP) staffing on September 6, 2012, and he was attending school half days until his situation stabilized. Stefan began attending special education classes at Shelly Baird School on January 31, 2013. (Id. at 28.)

An IEP team was staffed and a plan was developed to address Stefan's educational needs on March 14, 2013. (Id. at 2, 7-27, 28.) The IEP was required to review the current social, emotional and behavioral needs of Stefan to prepare appropriate IEP goals and ensure that his placement was appropriate. (Id. at 7-9.) Defendant Sandoval instructed Plaintiff and Ms. Rodriguez to attend the IEP. (Id. at 2.)

---

[1] Due to the complaints vague allegations and unorganized structure, the Court has reviewed the attachments to the complaint to provide a basis by which to provide Plaintiff with legal standards for his claims.

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1   The IEP shows that the recommendation was for Stefan to be placed in a separate classroom in a public integrated facility for 300 minutes per day, 5 days per week. (ECF No. 1 at 25.)  The educational team found that due to his lack of impulse control and ineffective emotional coping skills Stefan required more structure and supervision than can be provided in a regular classroom.  (Id. at 10.)  The team considered Special Day Class with possible mainstreaming into general education class.  (Id. at 24.)  Based on his continuing inappropriate behaviors, a county ED SDC classroom with SLP services and behavioral supports was found to be appropriate.  (Id.)  Stefan was out of the regular classroom 100% of the time with special education services being provided at his school of residence.  (Id. at 26.)

Plaintiff disagreed with the IEP team's recommendation and wanted Stefan moved to another classroom stating the problem was that the teacher did not know how to deal with his son and that Stefan was just manipulating everyone so he could stay home.  Stefan's grandmother would not engage in conversation, but shook her head "no" during the course of the IEP.  The IEP team made the decision to place Stefan on home hospital with a school teacher to provide instruction while Stefan's medications were monitored.  Plaintiff refused to sign the IEP.  (Id. at 29.)

Plaintiff contends that on May 23, 2013, Defendant Sandoval filed a complaint with the Department of Human Services, the Juvenile Court, and Plaintiff's probation officer alleging that Plaintiff's anger is an issue.  Plaintiff alleges that Defendant Sandoval falsified information as to his anger issues brought on by depression to have his conditions of probation upheld, and to prevent future visitation with his son and there were preexisting complaints filed from 2010 through 2013 with the Department of Human Services.  (Id. at 4.)

On July 3, 2013, Stefan was removed from his grandmother's home due to issues with his school and medication.  In August 2013, Stefan was assaulted by another teenager in the boy's home in which he was placed.  Plaintiff contends that Stefan was removed from one home to another in violation of California Welfare and Institutions Code section 16010.6.  (Id. at 3.)

Defendant Sandoval filed a status report with the court on September 10, 2013.  (Id. at 39-41.)  The report indicates that on March 28, 2013, Plaintiff's educational rights were limited

and recommends continuing to limit the educational rights of Plaintiff due to his refusing to sign the IEP; the active restraining order between himself, Ms. Rodriguez, and Stefan; and an active restraining order between Plaintiff and the Hanford Elementary School District. (Id. at 39-40.)

An IEP team reconvened on October 14, 2013 due to Stefan's escalating behavior of disrupting class and threatening staff. (Id.)

On October 15, 2013, the restraining order regarding Plaintiff's contact with Stefan was lifted by the state court. (Id. at 35.) On this same date, the court held a twelve month review hearing in the placement case. (Id. at 47.) Defendant Sandoval filed a report with the court prior to the hearing. (Id. at 47-49.)

The court found that Plaintiff had failed to demonstrate necessary behavioral changes in his court-ordered case plan, including anger management skills and refusal to drug test upon request. (Id. at 36.) Reasonable services had been provided or offered to aid Plaintiff and Stefan's mother in overcoming the problems that led to the initial removal and custody of Stefan. (Id. at 36.) Continued placement was necessary and Stefan's current placement was found to be appropriate. (Id. at 36.) Plaintiff was found to have made minimal progress toward alleviating or mitigating the causes that necessitated placing Stefan in out of home care. (Id. at 36.) The Court found that there was a need to limit the right of Plaintiff to make educational decisions for Stefan because he makes decisions that are contrary to Stefan's best interests. (Id. at 37.) The Court terminated family reunification services and approved the permanency planning case plan. (Id. at 37.)

Plaintiff alleges that in December 2013, after his probation was modified, Defendant Sandoval informed him that he could not bring gifts to Stefan and that he could not use the outside recreational yard. Plaintiff complained to Kristie Herrera. (Id. at 2.) Plaintiff further contends that there were complaints that an employee of the Department of Human Services was involved in organized crime. (Id. at 4.) Plaintiff also alleges that an employee of the Department of Human Services, Irene Hernandez, breached the data base system and sought his personal information to achieve a sexual relationship. (Id. at 4.) The Human Resources Department obstructed the investigation. (Id. at 4.)

Plaintiff contends that due to issues regarding his son and the actions of the Kings County Human Services Department, he became depressed and suffered mental anguish causing him to use drugs. (Id. at 3.) Plaintiff alleges that Defendant Sandoval retaliated against him for refusing the sign the IEP by attempting to violate his probation, and that reducing his son's education violates the Free Appropriate Education Act by shifting the burden to educate his son to Ms. Rodriguez. (Id. at 2.)

For the reasons discussed below, Plaintiff's complaint fails to state a cognizable claim against Defendants Sandoval or Kings County Human Services Department. Plaintiff shall be provided an opportunity to amend his complaint to correct the deficiencies identified in this order.

## III.

## DISCUSSION

### A. Standing

For each form of relief sought in federal court, Plaintiff must establish standing. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010). This requires the plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted).

Additionally, constitutional rights are personal rights and only the person subject to the violation has standing to bring suit. See Whitmore v. Arkansas, 495 U.S. 149, 160 (1990). "The general rule is that only the person whose [personal] rights were violated can sue to vindicate those rights." Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 369 (9th Cir. 1998). Plaintiff may not bring suit to vindicate the constitutional rights of his son.

### B. Linkage Requirement

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. In a section 1983 action, the complaint must allege that every defendant acted with the requisite state of mind to violate underlying constitutional provision. OSU Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).

Plaintiff's complaint is comprised of conclusory allegations of misconduct without sufficient facts to support the allegations. For example, Plaintiff contends that Defendant Sandoval falsified information without identifying any false statements. Review of the documents attached to the complaint reveals that Defendant Sandoval reported that Plaintiff had depression, a positive drug test, and admitted that he had relapsed. Plaintiff states in his complaint that he was depressed and his relapse was brought on by oppression from the Kings County Human Services Agency. (ECF No. 1 at 3.) Further, Plaintiff contends that Defendant Sandoval reported that his anger is an issue, and the record demonstrates that he was ordered to attend and did attend anger management classes. (Id. at 4, 49.)

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and Plaintiff's allegations fall short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

The Court shall provide Plaintiff with the legal standards that appear to apply to his claims. Plaintiff is advised that in his amended complaint he should only allege those claims that he believes in good faith are cognizable.

///

### C. Municipal Liability

Plaintiff appears to be attempting to bring this action against the Kings County Human Services Agency. A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, "and the policy was the moving force behind the constitutional violation." Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (citation omitted); see also Gibson, 290 F.3d at 1185-86.

A municipality can be held liable under section 1983 under three theories. First, where the implementation of official policies or established customs cause the constitutional injury. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010). Second, where acts or omissions causing the constitutional injury amount to official policy of the municipality. Clouthier, 591 F.3d at 1249. Finally, where an official has ratified the unconstitutional decision or action of an employee of the municipality. Id. at 1250. "A custom can be shown or a policy can be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Pierce v. County of Orange, 526 F.3d 1190, 1211 (9th Cir. 2008).

### D. Judicial Immunity

Judicial immunity is afforded to "certain individuals who perform functions closely associated with the judicial process." Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996)). Individuals who perform functions that are an integral part of the judicial process are immune from liability. See Meyers v. Contra Costa County Dept. of Social Services, 812 F.2d 1154, 1158 (9th Cir. 1987) (child services workers in initiating and pursuing dependency proceedings); Briscoe v. LaHue, 460 U.S. 325, 329 (1983) (witnesses testifying during judicial proceedings); Sellars v. Procunier,

1  641 F.2d 1295, 1303 (1981) (parole board officials in considering parole applications); Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970 (probation officers and court-appointed psychiatrists in preparing and submitting reports to the court); Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1985) (probation officer in investigating and preparing presentencing report for court); Todd v. Landrum, No. 2:12-cv-01770 LKK KJN PS, 2012 WL 5187836, at *3 (E.D. Cal. Oct. 17, 2012) (court appointed mediator).

### E. Equal Protection

An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

### F. 28 U.S.C. § 1981

Similarly "[t]o establish a claim under § 1981, plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). To prevail on this claim, Plaintiff must "prove as an element of the cause of action some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the [official's] action." Dennis v. Thurman, 959 F.Supp. 1253 (C.D. Cal. 1997) (internal punctuation and citations omitted); Hispanic Taco Vendors of Washington v. City of Pasco, 790 F.Supp. 1023, 1031 (E.D. Wash. 1991). Section 1981 can only be violated by purposeful discrimination. General Bld. Contractor's Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

### G. Parental Rights

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty

interest without due process of law is remediable under 42 U.S.C. § 1983." Lee, 250 F.3d at 685.  Due process requires the observance of procedural protections before the state may interfere with the family relationship. Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007).  However, the interest in maintaining the family relationship is not absolute and the interest of the parent must be balanced against the interests of the state and, when conflicting, the interests of the children. Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1125 (9th Cir. 1989).

### H. Individuals with Disabilities Act

Plaintiff alleges a violation of the free appropriate education act, and the Court construes this to be a claim under the Individuals with Disabilities Education Act ("IDEA"). "The IDEA provides states with federal funds to help educate children with disabilities if they provide every qualified child with a [free appropriate public education] that meets the federal statutory requirements." M.M. v. Lafayette School Dist., 767 F.3d 842, 851 (9th Cir. 2014) (quoting Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 882 (9th Cir. 2001)). The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A). "The IDEA provides for a cooperative process between parents and schools that culminates in the creation of an IEP for every disabled student." Lafayette Sch. Dist., 767 F.3d at 851.

Plaintiff is advised that neither Defendant Sandoval nor the Kings County Department of Human Services are appropriate defendants for an IDEA claim. See Evert H. v. Dry Creek Joint Elementary School, 5 F.Supp.3d 1167, 1180 (E.D. Cal. 2014) (only the Local Education Agency bears the responsibility for providing a free and appropriate public education under the IDEA).

### I. Retaliation

A claim can be stated under section 1983 where a plaintiff alleges that a state actor retaliated against him for exercising his rights under the First Amendment. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). To state a claim, the plaintiff must allege that he was engaged in protected activity, and that the protected conduct was a substantial or

motivating factor for the retaliatory acts. Id. at 287. It is not sufficient to merely allege adverse action in proximity to the protected activity, a nexus between the protected activity and the adverse action must be shown. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).

**J.     Welfare & Institution Code**

Plaintiff alleges that Defendant Sandoval violated California Welfare & Institution Code section 16010.6 which requires that as soon as the placing agency makes a decision regarding placement or change in placement, but not later than the following day, the agency shall notify the child's attorney. Initially, the Court notes that the complaint does not allege that the minor's attorney was not timely notified of the placement. Moreover, a violation of a state statute does not necessarily give rise to a private cause of action. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal.4th 592, 596 (2010). Whether a private cause of action is intended depends on whether the legislature manifested an intent to create a private cause of action. Id. Finally, to the extent that such a violation could be maintained as a private cause of action, it appears that it would properly be brought by Stefan and not Plaintiff.

**K.     Joinder**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.3d 1371, 1375 (9th Cir. 1980).

In this instance, the claims alleged in the complaint do not arise out to the same transaction or occurrence or series of transactions or occurrences, nor are there common questions of law or fact. While it is clear that Plaintiff is dissatisfied with the manner in which Defendant Sandoval has handled his child custody action, he is attempting to bring claims in which she is not a proper defendant. Plaintiff is cautioned that if his amended complaint fails to comply with Rule 18(a), the Court will choose which claims will proceed and will dismiss out all

unrelated claims.

### L. Amended Complaint

Finally, Plaintiff is advised that although the Court did review the exhibits to determine the basis of his current complaint, it will not mine through exhibits to determine if Plaintiff states a claim. In his amended complaint, Plaintiff shall state as briefly as possible the facts of his case, describing how each defendant is involved, and Plaintiff shall not give any legal arguments or cite to any cases or statutes. Plaintiff shall separate his claims, so that it is clear what his claims are and who the defendants involved are. Further, for each claim, Plaintiff shall clearly and succinctly set forth the facts to state the acts or failure to act by each Defendant that led to a knowing violation of Plaintiff's federal rights.

## IV.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for a violation of his federal rights. Plaintiff is granted leave to file an amended complaint within thirty days. Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678-79. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012); Valdez-Lopez v. Chertoff, 656 F.3d 851, 857 (9th Cir. 2011), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint, filed December 4, 2014, is dismissed for failure to state a claim;
2. Within thirty days from the date of service of this order, Plaintiff shall file an amended complaint; and
3. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed.

IT IS SO ORDERED.

Dated: **December 12, 2014**

UNITED STATES MAGISTRATE JUDGE