# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BANUELOS,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>GLADYS SANDOVAL, et al.,<br><br>　　　Defendants. | Case No.  1:14-cv-01923---SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 5)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff, proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 4, 2014. On December 12, 2014, Plaintiff's complaint was dismissed, with leave to amend, for failure to state a claim. Currently before the Court is Plaintiff's first amended complaint, filed December 22, 2014. (ECF No. 5.)

## I.

## SCREENING REQUIREMENT

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted. In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff brings this action against Defendants Gladys Sandoval and the Kings County Board of Supervisors for incidents related to dependency proceedings for Plaintiff's son, Stefan Banuelos.

Plaintiff alleges that he filed for medical aid with the Kings County Human Services Department in December of 2009; and his intake case worker, Irene Hernandez, used the information to begin a sexual relationship with Plaintiff. (Complaint ¶ 6, ECF No. 5.) Plaintiff complained of discrimination and threats to Lupe Vila, the Coordinator of Kings County in 2011.[1] (Id.)

Stefan was adjudged to be a dependent of the court pursuant to California Welfare and Institutions Code section 300. (Id. at ¶ 7.) Due to a condition of Plaintiff's probation, he was prohibited from having contact with his mother, Gloria Rodriguez. (Id. at ¶ 10.) In March of 2013, an Individualized Education Plan (IEP) meeting was conducted for Stefan; and Plaintiff and Ms. Rodriguez were given notice to appear. The IEP meeting was also attended by Defendant Sandoval, Ms. Herrera, and designated school officials. (Id. at ¶ 9.) The result of the meeting was that Stefan was placed on home study. (Id. at ¶ 11.) Plaintiff refused to sign the IEP. (Id. at ¶ 12.)

On July 3, 2013, Stefan was removed from the home of his grandmother and placed in a

---

[1] To the extent that Plaintiff attempts to state a claim based upon these factual allegations, any viable claims would be improperly joined in this action as the incident is unrelated to the remaining allegations in the complaint. Fed. R. Civ. P. 18, 20.

group home.  (Id. at ¶ 13.)  In August 2013, while in the group home, Stefan was assaulted by another teen.  (Id. at ¶ 14.)

Plaintiff was visiting his son and was informed by Defendant Sandoval that he could not use the outside recreation yard nor bring Stefan any gifts, although other parents used the outside recreation yard and brought their children gifts.[2]  (Id. at ¶ 7.)  This continued until April 2014; and Plaintiff complained about the discrimination to Defendant Sandoval's supervisor, Kristie Herrera.  (Id. at ¶ 8.)

Plaintiff contends that in retaliation for his refusal to sign the IEP, Defendant Sandoval attempted to have his probation revoked, recommended to the juvenile court that his educational rights be revoked, stated that he had anger issues, attempted to stop visitation with Stefan, and falsified information to the court that his probation could not be modified.  (Id. at ¶¶ 15-17.)

Plaintiff asserts that he relapsed and started using drugs due to the treatment he received from Defendant Sandoval.  (Id. at ¶ 18.)  Plaintiff complained to the County about the treatment he was receiving by Defendant Sandoval and no corrective action was taken.  (Id. at ¶ 19.)

**III.**

**DISCUSSION**

Plaintiff contends that Defendants Sandoval and the Kings County Board of Supervisors violated 42 U.S.C. § 1983; 42 U.S.C. § 1981; the Individuals with Disabilities Education Act ("IDEA"), 20 USC §§ 1400 et al; and California Welfare and Institutions Code § 16010.6 by the acts alleged in the first amended complaint.

**A.     Kings County Board of Supervisors**

Plaintiff's complaint is devoid of any allegations regarding the Kings County Board of Supervisors.  To the extent that Plaintiff is attempting to state a claim based upon the failure of the Department of Human Services to take any action in regards to his complaints against Defendant Sandoval or the removal of Stefan from his grandmother's home, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory

---

[2] The first amended complaint states this occurred "[i]n December.03/14/ 2013/".  (ECF No. 5 at ¶ 7.)

of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, "and the policy was the moving force behind the constitutional violation." Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (citation omitted); see also Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).

Plaintiff's amended complaint is devoid of any factual allegations that a policy or custom existed in the County or that such a policy violated his federal rights. Plaintiff has failed to state a claim against the Kings County Board of Supervisors.

**B.     Absolute Immunity**

As Plaintiff was previously informed in the December 12, 2014 order dismissing his complaint with leave to amend, Defendant Sandoval is entitled to immunity for those functions she performed that are closely associated with the judicial process. (Order Dismissing Complaint With Leave to Amend 7:22-8:6, ECF No. 4.)

Individuals who perform functions that are an integral part of the judicial process are immune from liability. See Briscoe v. LaHue, 460 U.S. 325, 329 (1983) (witnesses testifying during judicial proceedings); Sellars v. Procunier, 641 F.2d 1295, 1303 (1981) (parole board officials in considering parole applications); Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970 (probation officers and court-appointed psychiatrists in preparing and submitting reports to the court); Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1985) (probation officer in investigating and preparing presentencing report for court); Meyers v. Contra Costa County Dept. of Social Services, 812 F.2d 1154, 1158 (9th Cir. 1987) (child services workers in initiating and pursuing dependency proceedings); Todd v. Landrum, No. 2:12-cv-01770 LKK KJN PS, 2012 WL 5187836, at *3 (E.D. Cal. Oct. 17, 2012) (court appointed mediator). An individual's immunity is dependent upon the particular function that he performs and not on whether his position had a general relationship to the judicial proceedings. Miller v. Gammie, 335 F.3d 889, 892 (9th Cir.

2003).

Defendant Sandoval is "entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Meyers, 812 F.2d at 1157. Defendant Sandoval acted as an advocate for the County in preparing reports to the juvenile court during the pendency of the juvenile proceedings and is entitled to immunity for the contents of the reports and the recommendations included in such reports. Id. at 1159. Plaintiff cannot state a claim against Defendant Sandoval for recommending that his educational rights be terminated, for testimony she provided in court proceedings, or for enforcing visitation orders imposed by the juvenile court. Miller, 335 F.3d at 896; Coverdell v. Dep't of Social and Health Servs, 834 F.2d 758, 765 (9th Cir. 1987). However, certain other actions alleged in the complaint are not clearly performed within the jurisdiction of prosecuting the action, such as communications with Plaintiff's parole officer and refusing to allow Plaintiff to give gifts to Stefan or access to the recreation yard. These allegations shall be discussed below.

### C.    42 U.S.C. § 1983

Liberally construed, the first amended complaint alleges violations of Plaintiff's rights to due process, equal protection, to petition the government, and for retaliation. Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 677. Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012). In other words, to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. As discussed above, Plaintiff

5

has failed to state a section 1983 claim against the Board of Supervisors as the first amended complaint does not contain any factual allegations regarding these defendants.

1. Equal Protection

An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff does not claim to be in a protected class, but alleges that Defendant Sandoval discriminated against him based upon his membership in a "lower class." (ECF No. 5 at p. 5.) While a plaintiff can meet the burden to show that official action treats a certain class in a discriminatory matter or imposes different burdens on different classes of people, Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 589 (9th Cir. 2008), the first amended complaint does not contain any allegations to identify what this "lower class" is or how he was treated differently than individuals of other classes. Plaintiff's conclusory statement that he is being discriminated against due to his membership in a lower class fails to state a plausible equal protection claim.

Similarly, Plaintiff claims Defendant Sandoval informed him that he could not access the recreation yard and could not bring Stefan any gifts, but other parents used the recreation yard and brought their children gifts. However, it is unclear when this occurred. Further, Plaintiff had a stay away order preventing him from contact with Stefan, he failed to make the necessary behavioral changes in his court-ordered case plan, by his own admission he relapsed into drug use, family unification services were terminated, and Stefan was found to be eligible to be placed for adoption, appointment of a legal garden or permanently placed on February 11, 2013.[3] (ECF

---

[3] Although Plaintiff has removed these facts from the first amended complaint, the Court incorporated them by reference in the initial screening order. United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

No. 1 at 35-37, 47-49.) The Court cannot reasonably infer that Defendant Sandoval is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79. Plaintiff has not included allegations to show that the other parents who were granted access were similarly situated to him. Plaintiff fails to state a plausible equal protection claim.

      2.      Due Process

Plaintiff alleges a violation of his right to due process. "It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." Lee, 250 F.3d at 685. Due process requires the observance of procedural protections before the state may interfere with the family relationship. Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007). However, the interest in maintaining the family relationship is not absolute and the interest of the parent must be balanced against the interests of the state and, when conflicting, the interests of the children. Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1125 (9th Cir. 1989).

Plaintiff's parental rights were adjudicated by the state court and the school district conducted an IEP meeting which Plaintiff attended and participated. Plaintiff's disagreement with the results of these proceedings is insufficient to state a claim that he was denied due process. Plaintiff's complaint does not identify any due process that he was denied. Plaintiff fails to state a claim for a denial of his due process rights.

      3.      Right to Petition the Government

Similarly, Plaintiff complains that he was denied his right to petition the government without stating any facts to support such a claim. The Petition Clause of the First Amendment protects the right of individuals to appeal to the courts and other government forums for resolution of legal disputes. Borough of Duryea, Pa. v. Guarnieri, 131 S.Ct. 2488, 2494 (2011). The right to petition and the right to free speech are not identical although they share substantial common ground. Borough of Duryea, Pa.,131 S.Ct. at 2494. "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." Id. at 2495. Plaintiff's first amended complaint does

not state facts to show that he was denied his right to petition by any defendant named in this action.

To the extent that Plaintiff intended to allege a freedom of speech claim based upon the alleged retaliation due to his refusal to sign Stefan's IEP, this shall be discussed below.

4.  Retaliation

A claim for retaliation can be stated under section 1983 where a plaintiff alleges that a state actor retaliated against him for exercising his rights under the First Amendment.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).  To state a claim, the plaintiff must allege that he was engaged in protected activity, and that the protected conduct was a substantial or motivating factor for the retaliatory acts.  Id. at 287.  It is not sufficient to merely allege adverse action in proximity to the protected activity, a nexus between the protected activity and the adverse action must be shown.  Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).

Plaintiff contends that Defendant Sandoval retaliated against him for his refusal to sign the IEP by 1) informing him the he could not use the outside recreation yard or bring gifts to Stefan; 2) attempting to have his probation revoked; 3) falsely stating he had anger issues, and 4) attempting to stop his visitation with Stefan.  The first amended complaint identifies the October 15, 2013 report to the juvenile court as Defendant Sandoval's attempt to have his probation revoked, falsely stating he has anger issues, and attempting to stop his visitation with Stefan.  (ECF No. 5 at ¶¶ 15, 16.)  To the extent that Plaintiff is alleging retaliation based upon the facts contained in the October 15, 2013 report to the juvenile court, Defendant Sandoval is entitled to absolute immunity as discussed above.  Plaintiff's amended complaint fails to state a claim based upon these allegations.

Plaintiff alleges that Defendant Sandoval retaliated against him for refusing to sign the IEP by refusing him access to the recreation yard and the ability to bring gifts to Stefan.  However, Plaintiff's conclusory allegation fails to state a cognizable claim for retaliation.  Plaintiff has not provided any factual allegations to create a nexus between the acts alleged and his refusal to sign the IEP.  As discussed above, there was a stay away order in place at some

point that prevented Plaintiff from having contact with Stefan, the alleged acts could be based upon the restraining order, rather than any retaliatory act by Defendant Sandoval.

Plaintiff should be granted one final opportunity to file an amended complaint in an attempt to cure the deficiencies of his retaliation claim. Plaintiff is advised that his amended complaint needs to clearly delineate when the alleged incidents occurred and provide a nexus between the acts alleged and his refusal to sign the IEP. Conclusory allegations of retaliation are not sufficient for the Court to reasonable infer that Defendant Sandoval's actions were motivated by his protected conduct.

### D.   28 U.S.C. § 1981

Plaintiff alleges a violation of 28 U.S.C. § 1981. To establish a claim under section 1981, plaintiff must show that (1) he is a member of a racial minority; "(2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). To prevail on this claim, Plaintiff must "prove as an element of the cause of action some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the [official's] action." Dennis v. Thurman, 959 F.Supp. 1253, 1263 (C.D. Cal. 1997) (internal punctuation and citations omitted); Hispanic Taco Vendors of Washington v. City of Pasco, 790 F.Supp. 1023, 1031 (E.D. Wash. 1991). Section 1981 can only be violated by purposeful discrimination. General Bld. Contractor's Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

Plaintiff's first amended complaint alleges that he was retaliated against for exercising his rights to free speech under the First Amendment. There are no facts alleged in the first amended complaint identifying Plaintiff's race. Other than conclusory allegations of discrimination, the first amended complaint contains no facts by which the Court can infer that Defendant Sandoval intended to discriminate against him based upon his membership in a "lower class" or for any other class-based reason. Plaintiff fails to state a claim for discrimination in violation of 28 U.S. § 1981.

///

1    **E.    Individuals with Disabilities Education Act**

2    Plaintiff alleges a violation of "U.S.C. 20. Education" which the Court construes to be a
3    claim under the Individuals with Disabilities Education Act **("**IDEA"). "The IDEA provides
4    states with federal funds to help educate children with disabilities if they provide every qualified
5    child with a [free appropriate public education] that meets the federal statutory requirements."
6    M.M. v. Lafayette School Dist., 767 F.3d 842, 851 (9th Cir. 2014) (quoting Amanda J. ex rel.
7    Annette J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 882 (9th Cir. 2001)). The IDEA was enacted
8    "to ensure that all children with disabilities have available to them a free appropriate public
9    education that emphasizes special education and related services designed to meet their unique
10   needs. . . ." 20 U.S.C. § 1400(d)(1)(A). "The IDEA provides for a cooperative process between
11   parents and schools that culminates in the creation of an [Individualized Education Program
12   ("IEP")] for every disabled student." Lafayette Sch. Dist., 767 F.3d at 851. The IDEA is
13   binding on each public agency in the state responsible for ensuring the education of students with
14   disabilities. 34 C.F.R. § 300.2(b); St. Johnsbury Academy v. D.H., 240 F.3d 163, 173 (2d Cir.
15   2001).

16   The responsibility of ensuring the disabled children receive a free and appropriate
17   education under the IDEA lies with the state education agency ("SEA"). 20 U.S.C. §
18   1412(a)(11). The SEA receives funds and then distributes the majority of the funds it receives
19   under the IDEA to the local education agency ("LEA") that is directly responsible for providing
20   a free and appropriate education to the disabled students. 20 U.S.C. § 1411(f)(2). An LEA is "a
21   public board of education or other public authority legally constituted within a State for either
22   administrative control or direction of, or to perform a service function for, public elementary
23   schools or secondary schools" or "any other public institution or agency having administrative
24   control and direction of a public elementary or secondary school. . . ." 20 U.S.C. § 1401.
25   Generally, the LEA develops the IEP for each child with a disability. 20 U.S.C. § 1401(14); 20
26   U.S.C. § 1414(d).

27   Plaintiff alleges that Defendant Sandoval was present at the IEP meeting in March of
28   2013 in which Defendant Sandoval and school officials recommended that Stefan be placed on

home studies. (ECF No. 5 at ¶¶ 9, 11.) The first amended complaint does not allege that Defendant Sandoval is employed by the school district, and the documents attached to the original complaint demonstrate that she is a Social Worker employed by the Human Services Agency. (ECF No. 1 at p. 49.)

The few courts that have considered the issue of who is properly a defendant in IDEA actions have found that only the education agency bears the responsibility for providing a free appropriate education under the IDEA and the IDEA does not permit damages against individual defendants. Evertt H. v. Dry Creek Joint Elementary School, 5 F.Supp.3d 1167, 1180 (E.D. Cal. 2014); see Ullmo v. Gilmour Academy, 273 F.3d 671, 679 (6th Cir. 2001) ("Although the IDEA does not specifically name the party against whom such an action may be brought, the 'language and structure of [the] IDEA suggest that either or both entities [the SEA or LEA] may be held liable for the failure to provide a free appropriate public education....' "); Blanchard v. Morton Sch. Dist., No. C06-5166 FDB, 2006 WL 2459167, at *2 (W.D. Wash. Aug. 25, 2006) aff'd in part, rev'd in part sub nom. Blanchard v. Morton Sch. Dist., 260 F. App'x 992 (9th Cir. 2007) ("defendants may not be sued in their individual capacities under the ADA, the Rehabilitation Act or the IDEA because these statutes do not provide for individual liability."); Blanchard v. Morton Sch. Dist., No. CV 02-5101 FDB, 2006 WL 1075222, at *2 (W.D. Wash. Apr. 20, 2006) judgment corrected, No. CV 02-5101 FDB, 2006 WL 1419381 (W.D. Wash. May 19, 2006) and aff'd, 504 F.3d 771 (9th Cir. 2007) opinion amended and superseded, 509 F.3d 934 (9th Cir. 2007) and aff'd, 509 F.3d 934 (9th Cir. 2007) ("As noted by the Ninth Circuit, '[t]he remedies available under the IDEA include educational services for disabled children.' ").

In Everett H., the district court found that the individual administrators in the school district could not be sued under the IDEA as the cause of action would be against the school district itself and not the individual actors. Everett H., 5 F.Supp.3d at 1180 (only the LEA bears the responsibility for providing a free and appropriate public education under the IDEA). Neither Defendant Sandoval nor the Kings County Board of Supervisors are proper defendants for a claim that the LEA failed to provide a free and public education to Stefan; and Plaintiff fails to state a cognizable claim under the IDEA.

F.  **State Law Claim**

Finally, Plaintiff makes the conclusory allegation that Welfare and Institutions Code section 16010.6 was violated. California Welfare & Institution Code section 16010.6 provides that as soon as the placing agency makes a decision regarding placement or change in placement, but not later than the following day, the agency shall notify the child's attorney. The complaint is again devoid of any allegations, other than that Stefan was removed from his grandmother's home, to support a violation of the Welfare & Institution Code. Moreover, a violation of a state statute does not necessarily give rise to a private cause of action. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal.4th 592, 596 (2010). Plaintiff fails to allege any facts from which the Court could infer that Stefan's attorney was not timely notified of his placement. Plaintiff fails to state a claim for violation of section 16010.6.

**IV.**

**CONCLUSION AND RECOMMENDATION**

Plaintiff's complaint fails to state a claim for a violation of his federal rights upon which relief may be granted. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect," Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, in this action Plaintiff has been granted an opportunity to amend the complaint, with guidance by the Court. The Court finds that, other than the retaliation claim as discussed, the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants Kings County Board of Supervisors be dismissed from this action for Plaintiff's failure to state a claim against them;
2. Plaintiff's equal protection, due process, right to petition, 28 U.S.C. § 1981, and IDEA claims be dismissed without leave to amend for failure to state a claim;
3. Plaintiff's claim under California Welfare and Institutions Code section 16010.6

be dismissed without leave to amend for failure to state a claim;

4. Plaintiff be granted leave to amend the retaliation claim based upon Defendant Sandoval's refusal to allow Plaintiff to bring Stefan gifts and access the recreation yard; and

5. The retaliation claims in regard to all other allegations be dismissed with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to these findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 30, 2014**

UNITED STATES MAGISTRATE JUDGE